# UNITED STATES DISTRICT COURT

for the
Eastern District of New York ▾

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>In the Matter of the Application of the United States Of America for a<br>Search and Seizure Warrant for the Premises Known and Described<br>as 214 Beach 97th Street, Far Rockaway, New York, and Any Closed<br>Containers/Items Contained Therein | )<br>)<br>)<br>)<br>)<br>)<br><br>Case No.   21-MJ-418 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ Eastern _____ District of _____ New York _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 641 | Theft of government funds |
| 18 USC 1341 | Mail fraud |
| 18 USC 1343 | Wire fraud |

The application is based on these facts:
See attached Agent Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*KPv↑*

*Applicant's signature*

Kristen Dufour, Special Deputy U.S. Marshal, NY/NJ Regional Fugitive Task Force

*Printed name and title*

Sworn to me through the transmission of this
Affidavit by reliable electronic means,
pursuant to Federal Rules of Criminal Procedure
41(d)(3) and 4.1 this

Date: _____ 4/6/21 _____

*Lois Bloom*

*Judge's signature*

City and state:  Brooklyn, New York

Hon. Lois Bloom, U.S. Magistrate Judge

*Printed name and title*

| Print | Save As... | Attach | Reset |
|---|---|---|---|

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of the United States Of America for a Search and Seizure Warrant for the Premises Known and Described as 214 Beach 97th Street, Far Rockaway, New York, and Any Closed Containers/Items Contained Therein | **TO BE FILED UNDER SEAL**<br><br>**Agent Affidavit in Support of Application for Search and Seizure Warrant** |

EASTERN DISTRICT OF NEW YORK) ss.:

KRISTEN DUFOUR, being duly sworn, deposes and says:

## I.  Introduction

### A.  Affiant

1.        I am an Investigative Attorney with the New York City Department of Investigation ("DOI").  I am also a Special Deputy U.S. Marshal with the NY/NJ Regional Fugitive Task Force.  As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.  I have been employed by DOI for approximately 6 years.  At DOI, I am responsible for, among other things, conducting and assisting in investigations involving public corruption and frauds perpetrated against New York City.  During my time with DOI and as a Special Deputy U.S. Marshal, I have conducted and participated in the execution of premises search warrants and search warrants involving electronic evidence.  Through my training and experience, I have become familiar with the manner in which people use technology to commit crimes and the law enforcement techniques that can be used to investigate and disrupt such activity.

2.        I make this Affidavit in support of an application pursuant to Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises specified below (the "Subject

2019.11.19

Premises") for, and to seize, the items and information described in Attachment A.  This affidavit is based upon my personal knowledge; my review of documents and other evidence; my conversations with other law enforcement personnel; and my training, experience and advice received concerning the use of computers in criminal activity and the forensic analysis of electronically stored information ("ESI").  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**B.  The Subject Premises**

3.     The Subject Premises is particularly described as a three-story home with a garage located at 214 Beach 97th Street, Far Rockaway, New York.   The front door to the Subject Premises is white and bears the number "214."  Below are photographs of the outside and certain portions of the inside of the Subject Premises:

2019.11.19



2019.11.19



2019.11.19

**C.  The Subject Offenses**

4.      For the reasons detailed below, I believe that there is probable cause to believe that the Subject Premises contain evidence, fruits, and instrumentalities of (a) a scheme to defraud the United States Government and New York City agencies, including the New York City Human Resources Administration ("HRA"), the New York City Housing Preservation & Development ("HPD"), and the New York City Housing Authority ("NYCHA," and with HRA and HPD, the "Agencies"), by fraudulently claiming to own 20 properties (the "Properties") in New York City and renting out those Properties to homeless and low-income families pursuant to the Agencies' rental assistance programs, and fraudulently collecting hundreds of thousands of dollars in rental and related payments from the Agencies as the purported owner and landlord of the Properties; and (b) Medicaid fraud, in violation of Title 18, United States Code, Sections 641 (theft of government funds), 1341 (mail fraud), 1343 (wire fraud), and 2 (aiding and abetting the aforementioned offenses) (the "Subject Offenses").

**II.  Probable Cause**

**A.  Probable Cause Regarding Subject's Commission of the Subject Offenses**

5.      On April 2, 2021, United States Magistrate Judge Debra Freeman signed a Complaint charging PAUL FISHBEIN, the defendant, with the Subject Offenses, and issued a warrant for his arrest (the "Arrest Warrant").  Copies of the Complaint and Arrest Warrant are attached hereto as Exhibit A.  The Complaint is incorporated by reference herein.

6.      On April 6, 2021, FISHBEIN was arrested by the United States Marshals and DOI pursuant to the Arrest Warrant at the Subject Premises.

<u>The Rental Assistance Program Fraud</u>

7.      As charged in the Complaint, there is probable cause to believe that FISHBEIN, directly and indirectly through entities he owns, including 2166 Dean LLC, defrauded federal and

5

city agencies by claiming to own the Properties, three of which are in the Bronx, New York, and renting out the Properties to homeless and low-income families pursuant to the Agencies' rental assistance programs.  Specifically, FISHBEIN fraudulently participated in and collected money from HRA's "Rental Assistance Program," HPD's "Section 8 Housing Program," and NYCHA's "Section 8 Housing Program."

8.      As discussed in Paragraphs 10, 15 to 19, and 21 to 24 of the Complaint, FISHBEIN does not and has never owned the Properties.  By falsely claiming to own the Properties and renting them out through the Agencies' rental assistance programs, FISHBEIN fraudulently collected at least approximately $1.5 million from the Agencies, including hundreds of thousands of dollars in federal funds, from at least in or about 2013 through at least in or about the present.

9.      Based on my conversations with DOI Special Investigator-1, who has reviewed documents obtained from the Agencies and from New York's "Automated City Register Information System" ("ACRIS") regarding the Properties, including deeds, I know that the Properties that FISHBEIN fraudulently claimed to own and rented out are as follows:

     i.     1511A Commonwealth Avenue, Bronx, NY

     ii.     1511B Commonwealth Avenue, Bronx, NY

     iii.     2529B Grand Avenue, Bronx, NY

     iv.     551 Liberty Avenue, Brooklyn, NY

     v.     305 Berriman Street, Brooklyn, NY

     vi.     24-30 Beach Channel Drive, Queens, NY

     vii.     24-32 Beach Channel Drive, Queens, NY

     viii.     24-36 Beach Channel Drive, Queens, NY

     ix.     480 Quincy Street, Brooklyn, NY

6

2019.11.19

      x.     509 Rutland Road, Brooklyn, NY

      xi.     91-07 184th Street, Queens, NY

      xii.     608 Van Buren Street, Brooklyn, NY

      xiii.     309 Beach 88th Street, Queens, NY

      xiv.     117-55 140th Street, Queens, NY

      xv.     54-64 46th Street, Queens, NY

      xvi.     99-27 Francis Lewis Blvd, Queens, NY

      xvii.     121-21 194th Street, Queens, NY

      xviii.     82 Utica Avenue, Brooklyn, NY

      xix.     672 Van Siclen Avenue, Brooklyn, NY

      xx.     189-32 113th Road, Queens, NY

10.     The relevant details regarding this scheme are set forth in Paragraphs 7-36 of the Complaint.

Medicaid Fraud

11.     As charged in the Complaint, FISHBEIN also engaged in Medicaid fraud.

12.     Specifically, as alleged in Paragraphs 38(a)-(e) to 39(a)-(h) of the Complaint, from at least in or about 2014 through at least in or about the present, FISHBEIN lied to HRA—one of the New York City agencies that determines Medicaid eligibility—about his income and financial resources in order to obtain Medicaid benefits.

13.     As reflected in Paragraphs 39 to 41 of the Complaint, had FISHBEIN truthfully reported his income, he would not have been eligible for Medicaid.

2019.11.19

14.     As alleged in Paragraph 42 of the Complaint, through this scheme, FISHBEIN fraudulently obtained at least approximately $47,621 in Medicaid benefits from at least in or about 2014 through at least in or about the present.

**B.  Probable Cause Justifying Search of the Subject Premises**

15.     On April 5, 2021, United States Magistrate Judge Lois Bloom signed a search and seizure warrant ("Search Warrant-1") for an apartment and all electronic devices located at 8200 Shore Front Parkway (the "8200 Shore Front Parkway Property").  FISHBEIN has listed that address as both his residential and business address since at least in or about 2013, including on paperwork he submitted to the Agencies as the purported owner and landlord of the Properties.

16.     On April 5, 2021, United States Magistrate Judge Stewart D. Aaron signed a warrant for prospective location information and pen register information for FISHBEIN's cellphone (the "Target Cellphone").  Based on information obtained pursuant to that warrant, law enforcement agents, including myself, confirmed that FISHBEIN was in Far Rockaway, New York, where both the Subject Premises and the 8200 Shore Front Parkway Property are located. Indeed, according to Google Maps, the Subject Premises is approximately a five-minute drive from the 8200 Shore Front Parkway Property.

17.     On April 6, 2021, FISHBEIN was ultimately arrested at the Subject Premises.  I was present for the arrest.

18.     An individual who identified herself as FISHBEIN's girlfriend was also present at the Subject Premises at the time of the arrest.  She stated, in substance and in part, that FISHBEIN has lived at the Subject Premises—at least part time—since at least in or about 2017.  She also stated that FISHBEIN owns and has access to the entirety of the Subject Premises.

8

2019.11.19

19.     Based on my conversations with a special investigator at DOI with primary responsibility for this investigation ("DOI Special Investigator-1"), who has reviewed emails obtained from a Yahoo email account of FISHBEIN's and court records, I have learned, among other things, that in or about 2018, FISHBEIN was convicted in Queens County Supreme Court of possession of a forged instrument in the second degree, in violation of New York Penal Law Section 170.25, for presenting a forged deed containing a forged notary signature and stamp to the County of Queens for the Subject Premises.  Such conduct is consistent with the charges FISHBEIN is facing in this case.  For example, as reflected in Paragraphs 17 to 18, 22 to 23, and 29 to 30 of the Complaint, FISHBEIN falsely claimed to be the owner and landlord of the Properties for purposes of renting out the Properties under the auspices of the Agencies' rental assistance programs by, among other things, filing fake/forged deeds on ACRIS.  Such deeds purported to sell the Properties to FISHBEIN.

20.     Based on my review of records obtained from ACRIS, I have learned, among other things, that FISHBEIN claims to be the owner of the Subject Premises.

21.     At the time of the arrest, I personally observed filing cabinets, numerous papers, a computer, and a printer, among other things, in FISHBEIN's bedroom at the Subject Premises. Below are photographs capturing some of these items.  I also observed boxes in the garage and in other parts of the Subject Premises.  Moreover, at the time of his arrest, FISHBEIN had the Target Cellphone on his person.  The Target Cellphone is assigned the call number that FISHBEIN listed on paperwork he submitted to HRA, HPD, and/or NYCHA in connection with claiming to be the landlord and owner of the Properties.

2019.11.19



2019.11.19



2019.11.19

11

22.     Based on my involvement in this case, and my training and experience, given FISHBEIN's longstanding and wide-reaching fraudulent activity concerning the Properties, and his involvement in Medicaid fraud, I believe there is probable cause to believe that the documents and electronic devices located in the Subject Premises will contain evidence, fruits, and instrumentalities of the Subject Offenses.

23.     Based on my conversations with DOI Special Investigator-1, who has reviewed emails obtained pursuant to search warrants, I have learned, among other things, that:

        a.     FISHBEIN communicated with others about the Properties.

        b.     For example, FISHBEIN circulated to the Agencies and to others via email copies of the fake deeds, the leases, and other paperwork he had to provide to the Agencies as the purported owner and landlord of the Properties, including paperwork in which he falsely claimed he was working with a broker to rent out certain Properties.

        c.     FISHBEIN drafted and emailed HRA forged letters from a broker ("Broker-1") whom FISHBEIN claimed was involved in renting out certain Properties.

        d.     FISHBEIN used stolen driver's licenses and Social Security numbers that belonged to the individuals who purportedly sold the Properties to FISHBEIN in connection with demonstrating that those individuals sold the Properties to FISHBEIN.

        e.     FISHBEIN also used, without Broker-1's knowledge or authorization, copies of Broker-1's broker licenses.  For example, in falsely claiming that he was using Broker-1 to rent out certain of the Properties, FISHBEIN submitted, without Broker-1's knowledge or authorization, copies of Broker-1's broker licenses to HRA.

24.     Based on my training and experience, where individuals engaged in fraud use their homes to carry out their criminal activity, evidence of the fraud is likely to be located at such

2019.11.19

locations, including on electronic devices located in the home(s).  Based on my training and experience, under such circumstances, electronic communications sent in furtherance of or otherwise in connection with fraudulent activity are likely to have been sent using electronic devices located in a defendant's home(s).  Consistent with this assessment, and given that FISHBEIN has lived, at least part time, at the Subject Premises since at least in or about 2017, I believe that in addition to the 8200 Shore Front Parkway Property, FISHBEIN carried out his fraudulent activities at the Subject Premises and that electronic communications sent to or from FISHBEIN in connection with or in furtherance of his fraudulent conduct, including any electronic communications sent to or from his Yahoo email account, would have been exchanged on electronic devices located in the Subject Premises.[1]

25.     Based on the foregoing, I respectfully submit that there is probable cause to believe that FISHBEIN is engaged in the Subject Offenses, and that evidence of this criminal activity is likely to be found in the Subject Premises and on electronic devices found in the Subject Premises.

26.     Accordingly, for the reasons above, I believe there is probable cause to believe that the following evidence, fruits, or contraband of the Subject Offenses will be found within the Subject Premises and on cellphones and other electronic devices within the Subject Premises:

---

[1] On April 6, 2021, other law enforcement officers executed Search Warrant-1 for the 8200 Shore Front Parkway Property.  Based on my conversations with those law enforcement officers, I have learned that numerous hard copy files pertaining to the Properties, as well as social security numbers and driver's licenses of HRA, HPD, and/or NYCHA clients placed in the Properties, tax documents, bank records, records pertaining to entities FISHBEIN used in connection with the Subject Offenses, and other evidence of the Subject Offenses were recovered from the 8200 Shore Front Parkway Property.  It appears, however, that FISHBEIN does not keep his electronic devices at that property.  Rather, based on my own personal observations, I believe that FISHBEIN's electronic devices are actually located at the Subject Premises.  Moreover, based on the type of evidence recovered from the 8200 Shore Front Parkway Property, and my observations of filing cabinets, boxes, and other papers at the Subject Premises, I believe that the Subject Premises, where FISHBEIN has apparently spent a significant amount of time since at least in or about 2017, will contain additional evidence of the Subject Offenses.

2019.11.19

a.  Evidence that PAUL FISHBEIN, the defendant, does not and has never lawfully owned the following properties: (1) 1511A Commonwealth Avenue, Bronx, NY, (2) 1511B Commonwealth Avenue, Bronx, NY, (3) 2529B Grand Avenue, Bronx, NY, (4) 305 Berriman Street, Brooklyn, NY, (5) 24-30 Beach Channel Drive, Queens, NY, (6) 24-32 Beach Channel Drive, Queens, NY, (7) 24-36 Beach Channel Drive, Queens, NY, (8) 480 Quincy Street, Brooklyn, NY, (9) 509 Rutland Road, Brooklyn, NY, (10) 91-07 184th Street, Queens, NY, (11) 608 Van Buren Street, Brooklyn, NY, (12) 309 Beach 88th Street, Queens, NY, (13) 117-55 140th Street, Queens, NY, (14) 54-64 46th Street, Queens, NY, (15) 99-27 Francis Lewis Blvd, Queens, NY, (16) 121-21 194th Street, Queens, NY, (17) 82 Utica Avenue, Brooklyn, NY, (18) 551 Liberty Avenue, Brooklyn, NY, (19) 672 Van Siclen Avenue, Brooklyn, NY, and (20) 189-32 113th Road, Queens, NY (together, the "Properties"), including evidence of fake/forged deeds, forged signatures on deeds, including forged notary signatures, stolen or fake notary stamps/seals, and the use of other people's driver's licenses and Social Security numbers;

b.  Evidence regarding the names of or other information about any identity theft victims whose information may have been used in connection with the fake deeds or other documentation for the Properties, including records and devices containing stolen financial, business, and personal identification data, and any identification documents in the name of, and any documents addressed to, any person other than FISHBEIN;

c.  Evidence of any documentation or information FISHBEIN provided to or received from the New York City Human Resources Administration ("HRA"), the New

14

York City Housing Preservation & Development ("HPD"), and the New York City Housing Authority ("NYCHA," and with HRA and HPD, the "Agencies") regarding the Properties;

d. Evidence of any payments, including checks, debit cards, and electronic payments, that FISHBEIN received from the HRA, HPD, or NYCHA with respect to the Properties;

e. Evidence concerning any mortgages and foreclosures on the Properties;

f. Evidence concerning any lawsuits relating to the Properties;

g. All communications about the Properties;

h. Evidence of any co-conspirators, witnesses, or victims involved in FISHBEIN's scheme to defraud the Agencies;

i. Evidence of FISHBEIN acting as the owner or landlord of the Properties, including evidence of eviction proceedings FISHBEIN initiated against any clients the Agencies placed in the Properties;

j. Evidence of FISHBEIN's weekly, monthly, or annual income since 2014, and evidence of any assets or other financial resources FISHBEIN has had access to or owned since 2014;

k. Evidence of any documents or information submitted to or received from the United States Government, the State of New York, or the City of New York, or any agency thereof, related to Medicaid benefits;

l. Evidence of any documents or information pertaining to any health insurance companies that handled any claims for Medicaid on behalf of FISHBEIN;

2019.11.19

15

m.  Evidence of communications with or regarding victims or witnesses of the Subject Offenses;

n.  Evidence concerning ownership, use, or control by FISHBEIN of any bank accounts used in connection with the Subject Offenses, including without limitation, debit cards, deposit slips, bank receipts, checkbooks, check registers, cashier's checks, bank account opening documents, bank statements, and any other bank account records;

o.  Evidence concerning ownership, control, or operation by FISHBEIN of 2166 Dean LLC and of any other LLC, corporation, partnership, proprietorship, company, or other business or legal entity, including without limitation, incorporation paperwork, lease paperwork, invoices or bills, and documents relating to the payment of fees relating to any such entities;

p.  Records of the location or disposition of criminal proceeds obtained from the Agencies;

q.  Records and devices showing locations of other evidence of the Subject Offenses;

r.  Records and devices containing contact information of co-conspirators, including telephone numbers, email addresses, addresses, and identifiers for instant messaging and social medial accounts;

s.  Passwords or other information needed to access any computers, other electronic devices, or online accounts; and

t.  Safes, key-lock strong boxes, suitcases, locked cabinets, and other types of locked or closed containers used to store currency, books, records, documents, financial instruments, and other items of the sort described above.

16

2019.11.19

**C.   Probable Cause Justifying Search of ESI**

27.     Based on my training and experience, I know that individuals who engage in schemes to defraud the government and others, including by stealing property and money from others, commonly use computers to access websites used for illegal activity; communicate with co-conspirators online; keep track of co-conspirator's contact information; keep a record of illegal transactions or criminal proceeds for future reference; and/or store stolen data for future exploitation.  As a result, they often store data on their computers related to their illegal activity, which can include logs of online "chats" with co-conspirators; email correspondence; contact information of co-conspirators, including telephone numbers, email addresses, and identifiers for instant messaging and social medial accounts; stolen financial and personal identification data, including bank account numbers, credit card numbers, and names, addresses, telephone numbers, and social security numbers of other individuals; and/or records of illegal transactions or the disposition of criminal proceeds.

28.     Based on my training and experience, I also know that, where computers are used in furtherance of criminal activity, evidence of the criminal activity can often be found months or even years after it occurred.  This is typically true because:

- Electronic files can be stored on a hard drive for years at little or no cost and users thus have little incentive to delete data that may be useful to consult in the future.

- Even when a user does choose to delete data, the data can often be recovered months or years later with the appropriate forensic tools. When a file is "deleted" on a home computer, the data contained in the file does not actually disappear, but instead remains on the hard drive, in "slack space," until it is overwritten by new data that cannot be stored elsewhere on the computer. Similarly, files that have been viewed on the Internet are generally downloaded into a temporary Internet directory or "cache," which is only overwritten as the "cache" fills up and is replaced with more recently viewed Internet pages. Thus, the ability to retrieve from a hard drive or other electronic storage media depends less on when the file was created or viewed than on a particular user's operating      system,      storage      capacity,      and      computer      habits.

17

- In the event that a user changes computers, the user will typically transfer files from the old computer to the new computer, so as not to lose data.  In addition, users often keep backups of their data on electronic storage media such as thumb drives, flash memory cards, CD-ROMs, or portable hard drives.

29.     Based on the foregoing, I respectfully submit there is probable cause to believe that FISHBEIN is engaged in (a) a scheme to defraud the U.S. Government and the Agencies in connection with Agencies' rental assistance programs, and (b) Medicaid fraud, and that evidence of this criminal activity is likely to be found in the Subject Premises and on computers and electronic media found in the Subject Premises.

## III.  Procedures for Searching ESI

### A.  Execution of Warrant for ESI

30.     Federal Rule of Criminal Procedure 41(e)(2)(B) provides that a warrant to search for and seize property "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information . . . for later review."  Consistent with Rule 41, this application requests authorization to seize any computer devices and storage media and transport them to an appropriate law enforcement facility for review.   This is typically necessary for a number of reasons:

- First, the volume of data on computer devices and storage media is often impractical for law enforcement personnel to review in its entirety at the search location.

- Second, because computer data is particularly vulnerable to inadvertent or intentional modification or destruction, computer devices are ideally examined in a controlled environment, such as a law enforcement laboratory, where trained personnel, using specialized software, can make a forensic copy of the storage media that can be subsequently reviewed in a manner that does not change the underlying data.

- Third, there are so many types of computer hardware and software in use today that it can be impossible to bring to the search site all of the necessary technical manuals and specialized personnel and equipment potentially required to safely access the underlying computer data.

- Fourth, many factors can complicate and prolong recovery of data from a computer device, including the increasingly common use of passwords, encryption, or other

features or configurations designed to protect or conceal data on the computer, which often take considerable time and resources for forensic personnel to detect and resolve.

**B.  Review of ESI**

31.     Following seizure of any computer devices and storage media and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will review the ESI contained therein for information responsive to the warrant.

32.     In conducting this review, law enforcement personnel may use various techniques to determine which files or other ESI contain evidence or fruits of the Subject Offenses.  Such techniques may include, for example:

- surveying directories or folders and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- conducting a file-by-file review by "opening" or reading the first few "pages" of such files in order to determine their precise contents (analogous to performing a cursory examination of each document in a file cabinet to determine its relevance);

- "scanning" storage areas to discover and possibly recover recently deleted data or deliberately hidden files; and

- performing electronic keyword searches through all electronic storage areas to determine the existence and location of data potentially related to the subject matter of the investigation[2]; and

---

[2] Keyword searches alone are typically inadequate to detect all relevant data.  For one thing, keyword searches work only for text data, yet many types of files, such as images and videos, do not store data as searchable text.  Moreover, even as to text data, there may be information properly subject to seizure but that is not captured by a keyword search because the information does not contain the keywords being searched.

2019.11.19

- reviewing metadata, system information, configuration files, registry data, and any other information reflecting how, when, and by whom the computer was used.

33.     Law enforcement personnel will make reasonable efforts to restrict their search to data falling within the categories of evidence specified in the warrant.  Depending on the circumstances, however, law enforcement personnel may need to conduct a complete review of all the ESI from seized devices or storage media to evaluate its contents and to locate all data responsive to the warrant.

**C.  Return of ESI**

34.     If the Government determines that the electronic devices are no longer necessary to retrieve and preserve the data, and the devices themselves are not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(c), the Government will return these items, upon request. Computer data that is encrypted or unreadable will not be returned unless law enforcement personnel have determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the Subject Offenses.

2019.11.19

## IV.  Conclusion and Ancillary Provisions

35.    Based on the foregoing, I respectfully request the court to issue a warrant to seize the items and information specified in Attachment A to this affidavit and to the Search and Seizure Warrant.


_____
KRISTEN DUFOUR
Special Deputy U.S. Marshal
NY/NJ Regional Fugitive Task Force


Sworn to me through the transmission of this
Affidavit by reliable electronic means,
pursuant to Federal Rules of Criminal Procedure
41(d)(3) and 4.1 this,


__6__ day of April, 2021

_____
HON. LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE

21

2019.11.19

**ATTACHMENT A**

**I.  Premises to be Searched—Subject Premises**

The premises to be searched (the "Subject Premises") are described as follows, and include all locked and closed containers found therein:

The Subject Premises is particularly described as a three-story home with a garage, located at 214 Beach 97th Street, Far Rockaway, New York.  The front door to the Subject Premises is white and bears the number "214."  Below are photographs of the outside and inside of the Subject Premises:



2019.11.19



2

## II.  Items to Be Seized

### A.  Evidence, Fruits, and Instrumentalities of the Subject Offenses

The items to be seized from the Subject Premises consist of the following evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 641 (theft of government funds), 1341 (mail fraud), and 1343 (wire fraud), and 2 (aiding and abetting the aforementioned offenses) (the "Subject Offenses") described as follows:

- Evidence that PAUL FISHBEIN does not and has never lawfully owned the following properties: (1) 1511A Commonwealth Avenue, Bronx, NY, (2) 1511B Commonwealth Avenue, Bronx, NY, (3) 2529B Grand Avenue, Bronx, NY, (4) 305 Berriman Street, Brooklyn, NY, (5) 24-30 Beach Channel Drive, Queens, NY, (6) 24-32 Beach Channel Drive, Queens, NY, (7) 24-36 Beach Channel Drive, Queens, NY, (8) 480 Quincy Street, Brooklyn, NY, (9) 509 Rutland Road, Brooklyn, NY, (10) 91-07 184th Street, Queens, NY, (11) 608 Van Buren Street, Brooklyn, NY, (12) 309 Beach 88th Street, Queens, NY, (13) 117-55 140th Street, Queens, NY, (14) 54-64 46th Street, Queens, NY, (15) 99-27 Francis Lewis Blvd, Queens, NY, (16) 121-21 194th Street, Queens, NY, (17) 82 Utica Avenue, Brooklyn, NY, (18) 551 Liberty Avenue, Brooklyn, NY, (19) 672 Van Siclen Avenue, Brooklyn, NY, and (20) 189-32 113th Road, Queens, NY, (together, the "Properties"), including evidence of fake/forged deeds, forged signatures on deeds, including forged notary signatures, stolen or fake notary stamps/seals, and the use of other people's driver's licenses and Social Security numbers;

- Evidence regarding the names of or other information about any identity theft victims whose information may have been used in connection with the fake deeds or other documentation for the Properties, including records and devices containing stolen financial, business, and personal identification data, and any identification documents in the name of, and any documents addressed to, any person other than FISHBEIN;

- Evidence of any documentation or information FISHBEIN provided to or received from the New York City Human Resources Administration ("HRA"), the New York City Housing Preservation & Development ("HPD"), and the New York City Housing Authority ("NYCHA," and with HRA and HPD, the "Agencies") regarding the Properties;

- Evidence of any payments, including checks, debit cards, and electronic payments, that FISHBEIN received from the HRA, HPD, or NYCHA with respect to the Properties;

- Evidence concerning any mortgages and foreclosures on the Properties;

- Evidence concerning any lawsuits relating to the Properties;

- All communications about the Properties;

- Evidence of any co-conspirators, witnesses, or victims involved in FISHBEIN's scheme to defraud the Agencies;

3

2019.11.19

- Evidence of FISHBEIN acting as the owner or landlord of the Properties, including evidence of eviction proceedings FISHBEIN initiated against any clients the Agencies placed in the Properties;

- Evidence of FISHBEIN's weekly, monthly, or annual income since 2014, and evidence of any assets or other financial resources FISHBEIN has had access to or owned since 2014;

- Evidence of any documents or information submitted to or received from the United States Government, the State of New York, or the City of New York, or any agency thereof, related to Medicaid benefits;

- Evidence of any documents or information pertaining to any health insurance companies that handled any claims for Medicaid on behalf of FISHBEIN;

- Evidence of communications with or regarding victims or witnesses of the Subject Offenses;

- Evidence concerning ownership, use, or control by FISHBEIN of any bank accounts used in connection with the Subject Offenses, including without limitation, debit cards, deposit slips, bank receipts, checkbooks, check registers, cashier's checks, bank account opening documents, bank statements, and any other bank account records;

- Evidence concerning ownership, control, or operation by FISHBEIN of 2166 Dean LLC and of any other LLC, corporation, partnership, proprietorship, company, or other business or legal entity, including without limitation, incorporation paperwork, lease paperwork, invoices or bills, and documents relating to the payment of fees relating to any such entities;

- Records of the location or disposition of criminal proceeds obtained from the Agencies;

- Records and devices showing locations of other evidence of the Subject Offenses;

- Records and devices containing contact information of co-conspirators, including telephone numbers, email addresses, addresses, and identifiers for instant messaging and social medial accounts;

- Passwords or other information needed to access any computers, other electronic devices, or online accounts; and

- Safes, key-lock strong boxes, suitcases, locked cabinets, and other types of locked or closed containers used to store currency, books, records, documents, financial instruments, and other items of the sort described above.

**B.   Search and Seizure of Electronically Stored Information**

The items to be seized from the Subject Premises also include any computer devices and storage media that may contain any electronically stored information falling within the categories set forth in Section II.A of this Attachment above, including, but not limited to, desktop and laptop computers, disk drives, modems, thumb drives, personal digital assistants, smart phones, digital

cameras, and scanners, as well as routers, modems, and network equipment used to connect to the Internet.  In lieu of seizing any such computer devices or storage media, this warrant also authorizes the copying of such devices or media for later review.

Included within the items to be seized from the Subject Premises are:

1.      Any items or records needed to access the data stored on any seized or copied computer devices or storage media, including but not limited to any physical keys, encryption devices, or records of login credentials, passwords, private encryption keys, or similar information.

2.      Any items or records that may facilitate a forensic examination of the computer devices or storage media, including any hardware or software manuals or other information concerning the configuration of the seized or copied computer devices or storage media.

3.      Any evidence concerning the identities or locations of those persons with access to, control over, or ownership of the seized or copied computer devices or storage media.

## C.  Review of ESI

Following seizure of any computer devices and storage media and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained therein for information responsive to the warrant.

In conducting this review, law enforcement personnel may use various techniques to locate information responsive to the warrant, including, for example:

- surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- opening or cursorily reading the first few "pages" of such files in order to determine their precise contents;

- scanning storage areas to discover and possibly recover recently deleted files or deliberately hidden files;

- performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation; and

- reviewing metadata, system information, configuration files, registry data, and any other information reflecting how, when, and by whom the computer was used.

2019.11.19

Law enforcement personnel will make reasonable efforts to search only for files, documents, or other electronically stored information within the categories identified in Sections II.A and II.B of this Attachment.  However, law enforcement personnel are authorized to conduct a complete review of all the ESI from seized devices or storage media if necessary to evaluate its contents and to locate all data responsive to the warrant.

6

# EXHIBIT A

Approved: _____
              SARAH L. KUSHNER
              Assistant United States Attorney

Before:   THE HONORABLE DEBRA FREEMAN
          United States Magistrate Judge      **21 MAG 3643**
          Southern District of New York

- - - - - - - - - - - - - - - - - - X
                                     :
                                     :   **SEALED COMPLAINT**
                                     :
UNITED STATES OF AMERICA             :
                                     :   Violations of
          - v. -                     :   18 U.S.C. §§ 641, 1341,
                                     :   1343, and 2
                                     :
PAUL FISHBEIN,                       :
                                     :   COUNTIES OF OFFENSE:
                      Defendant.     :   BRONX AND NEW YORK
                                     :
- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        ALISON LAZARO, being duly sworn, deposes and says that
she is a Special Investigator with the New York City Department
of Investigation ("DOI"), and charges as follows:

                            **COUNT ONE**
                   (Theft of Government Funds)

        1.    From at least in or about 2013 up to and
including at least in or about the present, in the Southern
District of New York and elsewhere, PAUL FISHBEIN, the
defendant, did embezzle, steal, purloin, and knowingly convert
to his use and that use of another, and without authority, did
sell, convey, and dispose of records, vouchers, money and things
of value of the United States, and a department and agency
thereof, to wit, the United States Department of Housing and
Urban Development ("HUD"), which exceeded the sum of $1,000, and
did receive, conceal, and retain the same with intent to convert
it to his own gain, knowing it to have been embezzled, stolen,
purloined and converted, to wit, the defendant fraudulently
received rental subsidy payments—that included federal funds
from HUD—for at least 20 properties (the "Properties") in New
York City that did not belong to him.

        (Title 18, United States Code, Sections 641 and 2.)

## COUNT TWO
(Wire Fraud)

2.    From at least in or about 2013 up to and
including at least in or about the present, in the Southern
District of New York and elsewhere, PAUL FISHBEIN, the
defendant, willfully and knowingly, having devised and intending
to devise a scheme and artifice to defraud, and for obtaining
money and property by means of false and fraudulent pretenses,
representations, and promises, and attempting to do so, did
transmit and cause to be transmitted by means of wire, radio,
and television communication in interstate and foreign commerce,
writings, signs, signals, pictures, and sounds, for the purpose
of executing such scheme and artifice, to wit, FISHBEIN
fraudulently obtained money from New York City's Human Resources
Administration ("HRA"), New York City's Housing Preservation &
Development ("HPD"), and the New York City Housing Authority
("NYCHA") (collectively, the "Agencies"), by falsely claiming to
be the landlord and owner of the Properties and renting out the
Properties to homeless families under the auspices of the
Agencies' rental assistance programs, and in connection
therewith and in furtherance thereof, FISHBEIN transmitted and
caused to be transmitted, for example, interstate electronic
mail.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
(Mail Fraud)

3.    From at least in or about 2013 through at least
in or about the present, in the Southern District of New York
and elsewhere, PAUL FISHBEIN, the defendant, willfully and
knowingly, having devised and intending to devise a scheme and
artifice to defraud, and for obtaining money and property by
means of false and fraudulent pretenses, representations, and
promises, for the purpose of executing such scheme and artifice
and attempting so to do, did place in a post office and
authorized depository for mail matter, matters and things to be
sent and delivered by the United States Postal Service, and did
deposit and cause to be deposited matters and things to be sent
and delivered by private and commercial interstate carriers, and
did take and receive therefrom, such matters and things, and did
knowingly cause to be delivered by mail and such carriers
according to the directions thereon, and at the places at which
they were directed to be delivered by the person to whom they
were addressed, such matters and things, to wit, FISHBEIN
fraudulently obtained money from the HRA, HPD, and NYCHA by

2

falsely claiming to be the landlord and owner of the Properties and renting out the Properties to homeless families under the auspices of the Agencies' rental assistance programs, and in doing so, mailed or caused to be mailed to or by those Agencies, including the HPD's office in New York, New York, packages of paperwork landlords were required to fill out and submit in order to participate in the Agencies' programs, and caused the Agencies to send FISHBEIN checks as the purported landlord of the Properties, including by mail.

(Title 18, United States Code, Sections 1341 and 2.)

**COUNT FOUR**
(Theft of Government Funds)

4.    From at least in or about 2014 up to and including at least in or about the present, in the Southern District of New York and elsewhere, PAUL FISHBEIN, the defendant, did embezzle, steal, purloin, and knowingly convert to his use and that use of another, and without authority, did sell, convey, and dispose of records, vouchers, money and things of value of the United States, and a department and agency thereof, to wit, the United States Department of Health & Human Services ("HHS"), the federal agency responsible for the Medicaid program, which exceeded the sum of $1,000, and did receive, conceal, and retain the same with intent to convert it to his own gain, knowing it to have been embezzled, stolen, purloined and converted, to wit, the defendant received more than $47,000 in Medicaid benefits to which he was not entitled.

(Title 18, United States Code, Sections 641 and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

5.    I am a Special Investigator with the DOI and I have been personally involved in the investigation of this matter.  This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement officers, as well as my examination of reports and other records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6.    Through my training and experience, I have become familiar with various public assistance programs that are administered by New York City and New York State.

## **The Rental Assistance Program Fraud**

### *HRA's Rental Assistance Program*

7.    Based on my training and experience, conversations I have had with representatives of HRA, and my review of materials obtained from HRA and publicly available information on HRA's website, I have learned, among other things, that:

a.    HRA administers a rental assistance program (the "Rental Assistance Program") that helps homeless families move out of the shelter system and into stable housing.

b.    Landlords who participate in the Rental Assistance Program rent housing to homeless families, and in turn, HRA pays participating landlords, among other things, (i) the first month's rent; (ii) a landlord bonus at signing, which is currently $4,300; and (iii) a rent supplement for either the first 3 or 11 months' rent, which is paid in a lump sum at the time of the lease.

c.    In addition, if a landlord uses the services of a broker in renting out the property, HRA will pay the broker a broker's fee equal to 15 percent of the annual rent.

d.    These and other program-related payments from HRA to participating landlords and brokers include funds from the federal government.

e.    Properties that landlords rent out must be clear of a specific set of violations and satisfy basic safety and living conditions.

### *HPD's Section 8 Housing Program*

8.    Based on my training and experience, conversations I have had with representatives of HPD, and my review of materials obtained from HPD and publicly available information on the HPD's website, I have learned, among other things, that:

a.    Like the HRA, HPD offers a rental subsidy program that helps provide critical affordable housing to New

4

Yorkers in need.  A property owner who participates in this program receives guaranteed monthly rent payments, among other benefits.

> b.   HPD's program is funded entirely by the federal government.

> c.   Specifically, HPD offers a Housing Choice Voucher program, which is also known as Section 8 ("HPD's Section 8 Housing Program").  This program provides federal funding to local housing agencies to assist eligible low-income families with rental subsidies toward decent, safe, and affordable housing.  Participating families pay a certain percentage of their income toward rent and HPD pays the difference directly to the landlord.

> d.   A unit rented out under this program must meet federal "Housing Quality Standards" to be approved and the owner must maintain the unit in accordance with those standards. These standards are based on the minimum criteria for safe housing.  For example, every Section 8 unit must have heat, hot and cold water, and an operable window in each living room and bedroom.

> e.   During the leasing process for this program, HPD generates and mails to the landlord a Housing Assistance Payments Contract, which the landlord must sign and return to HPD.

> f.   HPD pays participating landlords by check. Such checks are printed and mailed to a landlord from an office in New York, New York.

### *NYCHA's Section 8 Housing Program*

> 9.   Based on my training and experience, conversations I have had with representatives of NYCHA, and my review of materials obtained from NYCHA and publicly available information on NYCHA's website, I have learned, among other things, that:

> a.   NYCHA also operates a Section 8 program ("NYCHA's Section 8 Housing Program"), which provides assistance to eligible low- and moderate-income families to rent housing in the private market.

> b.   Eligibility for this program is based on a family's gross annual income and family size.

          c.    NYCHA's Section 8 Housing Program works as a rental subsidy that allows families to pay a reasonable amount of their income toward their rent.  In general, families pay no more than 40 percent of their adjusted monthly income toward their rent share.  NYCHA pays the remaining amount to the property owner on the family's behalf.

          d.    A unit rented out under NYCHA's Section 8 Housing Program must also meet federal "Housing Quality Standards" to be approved and the owner must maintain the unit in accordance with those standards.

          e.    NYCHA's Section 8 Housing Program is federally funded by HUD.

          f.    NYCHA makes monthly payments to owners electronically.

### *Overview Of FISHBEIN's Fraud On The Rental Assistance Programs*

          10.    Based on my participation in this investigation, and as detailed below, I have learned, among other things, that PAUL FISHBEIN, the defendant, defrauded HRA's Rental Assistance Program and HPD's and NYCHA's respective Section 8 Housing Programs (collectively, the "Rental Assistance Programs") by falsely claiming to be the owner and landlord of the Properties, renting out the Properties to homeless and low/moderate-income families through the Rental Assistance Programs, and collecting money (including federal funds) from HRA, HPD, and NYCHA as the purported owner and landlord of the Properties.

          11.    In addition, PAUL FISHBEIN, the defendant, falsely represented to HRA that he used a broker to rent out the Properties, and collected and kept for himself certain broker's fees that HRA issued for the Properties.

          12.    PAUL FISHBEIN, the defendant, not only enriched himself by defrauding the HRA, HPD, and NYCHA, he also took advantage of the homeless and in-need families who were placed in the Properties.  For example, most of the Properties that Fishbein rented out were dilapidated and uninhabitable.  Moreover, even though he was not the lawful owner of the Properties, FISHBEIN often evicted families shortly after they were placed in the Properties.

          13.    Through this scheme, PAUL FISHBEIN, the defendant, fraudulently obtained more than $1.5 million from

HRA, HPD, and NYCHA from at least in or about 2013 to in or about the present.  Of that amount, more than $270,000 consisted of federal funds.

### *The Fraud*

14.  Based on my review of documents obtained from the HRA, I know, among other things, that PAUL FISHBEIN, the defendant, defrauded HRA, HPD, and/or NYCHA by falsely claiming to be the owner and landlord of 20 Properties in New York City and renting out those Properties as his own pursuant to the Rental Assistance Programs.  In general, this scheme worked in the same manner with respect to each of the Properties.  For example, with respect to three of the Properties that were located in the Bronx, New York ("Bronx Property-1," "Bronx Property-2," and "Bronx Property-3," and collectively, the "Bronx Properties"), the scheme worked as follows:

### *Bronx Property-1*

15.  Based on my review of publicly available documents obtained from New York's "Automated City Register Information System" ("ACRIS"), and mortgage records for Bronx Property-1 obtained from a bank ("Mortgagor-1"), I know that, in or about February 2008, an individual ("Buyer-1") purchased Bronx Property-1 for approximately $600,000, with approximately $521,000 paid for by a mortgage.

16.  Based on my review of court records, I know that, in or about 2009, Mortgagor-1 filed a foreclosure action ("Foreclosure Action-1") against Bronx Property-1.

17.  Based on my review of publicly available documents obtained from ACRIS and documents obtained from HRA, I have learned, among other things, that in or about January 2013, while Foreclosure Action-1 was ongoing, a purported deed ("Purported Deed-1") was filed on ACRIS, which claimed to transfer Bronx Property-1 from Buyer-1 to 2166 Dean LLC, an entity owned by PAUL FISHBEIN, the defendant.  Purported Deed-1 stated that 2166 Dean LLC purchased Bronx Property-1 for $0.

18.  Based on my comparison of Buyer-1's signature on the deed from 2008, to the signature on Purported Deed-1, along with the fact that PAUL FISHBEIN, the defendant, purportedly purchased Bronx Property-1 for $0, I believe that Buyer-1's signature was forged on Purported Deed-1 and that Buyer-1 never sold Bronx Property-1 to FISHBEIN, or to 2166 Dean LLC.

19.   Based on my review of court records, I have learned, among other things, that in or about 2016, a judgment of foreclosure and sale was issued in Foreclosure Action-1, awarding Mortgagor-1 ownership over Bronx Property-1.

20.   Despite the fact that PAUL FISHBEIN, the defendant, was not the lawful owner of Bronx Property-1, I know based on my review of bank records and records obtained from HRA that:

a.   From at least in or about 2015 through at least in or about 2019, FISHBEIN represented himself to HRA as the owner and landlord of Bronx Property-1 and rented out Bronx Property-1 through HRA's Rental Assistance Program.  During this time period, FISHBEIN received at least approximately $72,726.27 from HRA as the purported owner and landlord of Bronx Property-1.

b.   In addition, on the required paperwork that FISHBEIN submitted to HRA, FISHBEIN claimed that he used the services of a broker ("Broker-1") in renting out Bronx Property-1.  On that paperwork, FISHBEIN attested that he was "not the broker nor in any way associated with the Agency charging a broker's fee for the procurement of [Bronx Property-1]" and that he "will not receive any part or all of the [b]roker's fee directly or indirectly from the broker."

c.   The statements above about the broker's fee were false.  FISHBEIN—and not Broker-1—was the one who actually received the broker's fees HRA issued for Bronx Property-1.  Specifically, based on my review of bank records, I know that, although HRA issued checks in the name of Broker-1, such checks were deposited into either an account ("Bank Account-1") at TD Bank that was held in the name of an entity owned by FISHBEIN and for which FISHBEIN was the signatory, or an account ("Bank Account-2") at Chase that was held in the name of 2166 Dean LLC and for which FISHBEIN was the signatory, and that money was not subsequently transferred to Broker-1.

*Bronx Property-2*

21.   Based on my review of publicly available documents obtained from ACRIS, and my review of mortgage records for Bronx Property-2 obtained from a bank ("Mortgagor-2"), I know that in or about February 2008, an individual ("Buyer-2") purchased Bronx Property-2 for approximately $600,000, with approximately $533,850 paid for by a mortgage ("Mortgage-2").

22.   Based on my review of publicly available documents obtained from ACRIS, I know that in or about January 2013, a purported deed ("Purported Deed-2") was filed on ACRIS, which claimed to transfer Bronx Property-2 from Buyer-2 to 2166 Dean LLC, PAUL FISHBEIN, the defendant's, entity.  Purported Deed-2 stated that 2166 Dean LLC purchased Bronx Property-2 for $0.

23.   Based on my conversations with Buyer-2, I have learned, among other things, that Purported Deed-2 was actually a forgery, Buyer-2's signatures on Purported Deed-2 were forged, and Buyer-2 never sold Bronx Property-2 to PAUL FISHBEIN, the defendant, or to 2166 Dean LLC.

24.   Based on my review of mortgage records, I have learned, among other things, that, in or about 2015, Bronx Property-2 was sold by Mortgagor-2 at a foreclosure sale to a third party.

25.   Despite the fact that PAUL FISHBEIN, the defendant, was not the lawful owner of Bronx Property-2, I know based on my review of bank records and records obtained from HRA that:

a.   From at least in or about 2014 through at least in or about 2016, FISHBEIN represented himself to HRA as the owner and landlord of Bronx Property-2 and rented out Bronx Property-2 through HRA's Rental Assistance Program.  During this time period, FISHBEIN received at least approximately $19,592.11 from HRA as the purported owner and landlord of Bronx Property-2.

b.   In addition, on the required paperwork that FISHBEIN submitted to HRA, FISHBEIN claimed that he used the services of Broker-1 in renting out Bronx Property-2.  On that paperwork, FISHBEIN attested that he was "not the broker nor in any way associated with the Agency charging a broker's fee for the procurement of [Bronx Property-2]" and that he "will not receive any part or all of the [b]roker's fee directly or indirectly from the broker."

c.   The statements above about the broker's fee were false.  FISHBEIN—and not Broker-1—was the one who actually received the broker's fees HRA issued for Bronx Property-2. Specifically, based on my review of bank records, I know that, although HRA issued checks in the name of Broker-1, such checks were deposited into either Bank Account-1 or Bank Account-2, and that money was not subsequently transferred to Broker-1.

26.  Based on my review of bank records and records obtained from HPD, I know, among other things, that from at least in or about 2014 to at least in or about 2016, PAUL FISHBEIN, the defendant, also represented himself to HPD as the owner and landlord of Bronx Property-2 and rented out Bronx Property-2 through HPD's Section 8 Housing Program.  During this time period, FISHBEIN received at least approximately $27,855.83—all of which were federal funds—from HPD as the purported owner and landlord of Bronx Property-2.  At least some of this money was paid to FISHBEIN by checks that were mailed to him from New York, New York.

*Bronx Property-3*

27.  Based on my review of publicly available documents obtained from ACRIS, and my review of mortgage records for Bronx Property-3 obtained from a bank ("Mortgagor-3"), I know that, in or about July 2008, an individual ("Buyer-3") purchased Bronx Property-3 for approximately $705,000, with $627,450 paid for by a mortgage ("Mortgage-3").

28.  Based on my review of travel records obtained from U.S. Customs and Broder Protection, I know that Buyer-3 left the United States in or about October 2008, and has not returned to the United States since then.

29.  Based on my review of publicly available documents obtained from ACRIS, I know that in or about December 2012, a purported deed ("Purported Deed-3") was filed on ACRIS, which claimed to transfer Bronx Property-3 from Buyer-3 to 2166 Dean LLC, PAUL FISHBEIN', the defendant's, entity.  Purported Deed-3 stated that 2166 Dean LLC purchased Bronx Property-3 for $0.

30.  Based on the facts that Buyer-3 was not in the United States at the time Buyer-3 purportedly sold Bronx Property-3 to PAUL FISHBEIN, the defendant, for $0, and my comparison of Buyer-3's signatures on the 2008 deed and on Purported Deed-3, I believe that Buyer-3's signatures on Purported Deed-3 were forged, and that Buyer-3 never sold Bronx Property-3 to FISHBEIN, or to 2166 Dean LLC.

31.  Despite the fact that PAUL FISHBEIN, the defendant, was not the lawful owner of Bronx Property-3, I know based on my review of records obtained from HRA that from at least in or about 2013 through at least in or about 2020, FISHBEIN represented himself to HRA as the owner and landlord of

10

Bronx Property-3 and rented out Bronx Property-3 through HRA's Rental Assistance Program.  During this time period, FISHBEIN received at least approximately $80,707 from HRA as the purported owner and landlord of Bronx Property-3.

32.   Based on my review of records obtained from NYCHA, I know, among other things, that from at least in or about 2013 through at least in or about the present, PAUL FISHBEIN, the defendant, also represented himself to NYCHA as the owner and landlord of Bronx Property-3 and rented out Bronx Property-3 through NYCHA's Section 8 Housing Program.  During this time period, FISHBEIN received at least approximately $174,183.20—all of which were federal funds—from NYCHA as the purported owner and landlord of Bronx Property-3.

*The Other Properties*

33.   Based on my review of publicly available documents obtained from ACRIS, records obtained from HRA, mortgage records, bank records, and court documents, as well as my conversations with others, including some of the buyers who purportedly sold their Properties to PAUL FISHBEIN, the defendant, I have learned, among other things, that FISHBEIN was never the lawful owner of the other Properties.  Specifically, I have learned, among other things, the following:

a.   FISHBEIN's scheme to defraud HRA extended to the other Properties as well.

b.   Just as he did with the Bronx Properties, FISHBEIN falsely represented to HRA that he was the owner and landlord of the other Properties, and rented out those Properties to homeless families under the auspices of HRA's Rental Assistance Program.

c.   FISHBEIN fraudulently collected landlord rental subsidy payments from HRA as the purported owner and landlord of the other Properties.

d.   FISHBEIN falsely claimed that brokers were used in renting out the other Properties, and fraudulently collected at least some of the broker's fees that HRA issued as a result for those Properties.

34.   In addition, based on my review of records obtained from HPD, I have also learned, among other things, that in addition to Bronx Property-2, PAUL FISHBEIN, the defendant, fraudulently obtained money from HPD for one of the other

11

Properties ("Property-4") by falsely claiming to be the owner and landlord of Property-4.  Specifically, from at least in or about 2014 through at least in or about the present, FISHBEIN rented out Property-4 through HPD's Section 8 Housing Program as the purported owner and landlord of Property-4.  In doing so, FISHBEIN received at least approximately $90,616.16 from HPD.

       35.  Based on my review of documents obtained from the Agencies and my review of emails obtained from PAUL FISHBEIN, the defendant's, Yahoo email account ("Yahoo Email Account"), whose servers are located in California, I have learned, among other things, that FISHBEIN was repeatedly in violation of the basic housing standards with which he, as the purported owner and landlord of the Properties, was required to comply. Moreover, FISHBEIN rented out the Properties even though many of them were dilapidated and uninhabitable, and failed to comply with even basic safety and living conditions.  Finally, despite these conditions and the fact that FISHBEIN was not the lawful owner of the Properties, FISHBEIN often evicted families shortly after they were placed in one of the Properties.

       36.  Based on my review of emails obtained from the Yahoo Email Account, I have learned, among other things, that PAUL FISHBEIN, the defendant, and the Agencies communicated about the Properties via email during the relevant time period. For example, a representative of HPD located in New York, New York emailed FISHBEIN about one of the Properties he sought to rent out through HPD's Section 8 Housing Program.

### **The Medicaid Fraud**

<u>The Medicaid Program</u>

       37.  Based on my review of records obtained from HRA as well as my conversations with employees of the New York State Office of the Welfare Inspector General, my training and experience, and my participation in this case and in prior investigations into New York public assistance program fraud, I know, among other things, the following:

       a.  Medicaid is a health insurance program for low-income adults, children, pregnant women, elderly adults and people with disabilities.

       b.  Medicaid is funded jointly by states and the federal government.  The funds from the federal government come from HHS.

c.    Medicaid is administered by states, according to federal requirements.

d.    In New York State, the Medicaid program is administered by the New York State Department of Health.

e.    In New York City, an eligible adult may apply for Medicaid through HRA.

f.    In New York, an adult may be eligible for Medicaid if he/she (1) has high medical bills, (2) receives Supplemental Security Income, and/or (3) meets certain financial requirements.

g.    In New York, to be eligible for Medicaid based on financial requirements, an adult must make below a certain monthly income and not have "resources"—that is, assets owned and/or available to the adult—above a certain amount.  The qualifying monthly income and resource levels vary depending on family size.

h.    The monthly income and resource levels for a family of one for the years 2014 through 2021 were as follows:

| Year | Monthly Income | Resource Level |
|------|----------------|----------------|
| 2014 | $809 | $14,550 |
| 2015 | $825 | $14,850 |
| 2016 | $825 | $14,850 |
| 2017 | $825 | $14,850 |
| 2018 | $842 | $15,150 |
| 2019 | $859 | $15,450 |
| 2020 | $875 | $15,750 |
| 2021 | $884 | $15,900 |

i.    The monthly income and resource levels for a family of two for the years 2014 through 2021 were as follows:

| Year | Monthly Income | Resource Level |
|------|----------------|----------------|
| 2014 | $1,192 | $21,450 |
| 2015 | $1,209 | $21,750 |
| 2016 | $1,209 | $21,750 |
| 2017 | $1,209 | $21,750 |
| 2018 | $1,233 | $22,200 |
| 2019 | $1,267 | $22,800 |
| 2020 | $1,284 | $23,100 |
| 2021 | $1,300 | $23,400 |

13

## The Fraud

38.   Based on my review of records obtained from HRA and my conversations with representatives in HRA's Medicaid department, I have learned, among other things, that:

a.   From at least in or about 2014 through at least in or about the present, PAUL FISHBEIN, the defendant, received Medicaid benefits based on his representations to HRA that he was eligible for such benefits based on Medicaid's financial requirements.

b.   Specifically, from at least in or about 2014 through at least in or about the present, FISHBEIN represented to HRA—for purposes of obtaining Medicaid benefits—that he worked at a company called LMF Credit Services Inc. and that his income was approximately $150 a week—that is, approximately $600 a month or approximately $7,200 a year.

c.   FISHBEIN did not report any other income or any other financial resources for purposes of establishing his eligibility for Medicaid.

d.   FISHBEIN—whom I believe, based on my review of his emails, was married at all relevant times—claimed he was the only member of his family for purposes of establishing his eligibility for Medicaid.

e.   FISHBEIN's application and/or renewal for Medicaid benefits were processed in New York, New York.

39.   Based on my review of bank records, however, and based on the information discussed above in Paragraphs 13 to 34, as well as my review of emails obtained from the Yahoo Email Account, I know that PAUL FISHBEIN, the defendant, made much more than $150 a week.  Specifically, I know, among other things, that:

a.   In 2014, FISHBEIN received at least approximately $243,465 from HRA, HPD, and/or NYCHA as the purported owner and landlord of the Properties and of other real estate in New York City.

b.   In 2015, FISHBEIN received at least approximately $426,203 from HRA, HPD, and/or NYCHA as the purported owner and landlord of the Properties and of other real estate in New York City.

14

        c.    In 2016, FISHBEIN received at least approximately $419,946 from HRA, HPD, and/or NYCHA as the purported owner and landlord of the Properties and of other real estate in New York City.

        d.    In 2017, FISHBEIN received at least approximately $323,680 from HRA, HPD, and/or NYCHA as the purported owner and landlord of the Properties and of other real estate in New York City.

        e.    In 2018, FISHBEIN received at least approximately $473,733 from HRA, HPD, and/or NYCHA as the purported owner and landlord of the Properties and of other real estate in New York City.

        f.    In 2019, FISHBEIN received at least approximately $313,376 from HRA, HPD, and/or NYCHA as the purported owner and landlord of the Properties and of other real estate in New York City.

        g.    In 2020, FISHBEIN received at least approximately $73,761 from HRA, HPD, and/or NYCHA as the purported owner and landlord of the Properties and of other real estate in New York City.

        h.    From at least in or about January 2021 to April 2021, FISHBEIN received at least approximately $23,000 from the HRA, HPD, and/or NYCHA as the purported owner and landlord of the Properties and of other real estate in New York City.

        40.  Based on my review of records obtained from HRA, I know that PAUL FISHBEIN, the defendant, did not report any of this income for purposes of establishing his eligibility for Medicaid.

        41.  In addition, based on my review of bank records, I know that the amount of money that PAUL FISHBEIN, the defendant, had in his bank accounts at any given time from least in or about 2014 through at least in or about the present, exceeded the maximum "resource level" that one must have to qualify for Medicaid.

        42.  Based on my review of records obtained from HRA, I know, among other things, that despite the fact that PAUL FISHBEIN, the defendant, was not eligible for Medicaid benefits, he received at least approximately $47,621 in Medicaid benefits

from at least in or about 2014 through at least in or about the
present.

WHEREFORE, deponent respectfully requests that a
warrant issue for the arrest of PAUL FISHBEIN, the defendant,
and that he be arrested, and imprisoned or bailed, as the case
may be.

s/Alison Lazaro, by the Court, with permission
Alison Lazaro
Special Investigator
New York City
Department of Investigations

Sworn to me through the transmission of this
Affidavit by reliable electronic means
(FaceTime), pursuant to Federal Rules of
Criminal Procedure 41(d)(3) and 4.1 this,

2nd day of April, 2021

THE HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

16

Mod AO 442 (09/13) Arrest Warrant     AUSA Name & Telno:  Sarah Kushner, Tel: 212-637-2676

# UNITED STATES DISTRICT COURT
### for the
## Southern District of New York

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| PAUL FISHBEIN | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant* | |

Case No.   **21 MAG 3643**

## ARREST WARRANT

To:     Any authorized law enforcement officer

      **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   Paul Fishbein                                                                ,
who is accused of an offense or violation based on the following document filed with the court:

❑ Indictment    ❑ Superseding Indictment    ❑ Information    ❑ Superseding Information    ❑ Complaint
❑ Probation Violation Petition    ☑ Supervised Release Violation Petition    ❑ Violation Notice    ❑ Order of the Court

This offense is briefly described as follows:

  Violations of 18 U.S.C. §§ 641, 1341, 1343, and 2

Date:     04/02/2021                      _____
                                          *Issuing officer's signature*

City and state:   New York, NY                      Hon. Debra Freeman, U.S. Magistrate Judge, SDNY
                                                   *Printed name and title*

| Return |
|---|
|     This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____                            _____ |
|                                             *Arresting officer's signature* |
|                                              _____ |
|                                              *Printed name and title* |